# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:17-cv-00300-MR-DLH

| | |
|---|---|
| KARL HENRIK SUNDBERG, ) <br> ) <br> Petitioner, ) <br> ) <br> vs. ) <br> ) <br> LISA MICHELLE BAILEY, ) <br> ) <br> Respondent. ) <br> _____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Petitioner's Application for Award of Expenses [Doc. 25] under the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, 19 I.L.M. 1501 ("the Hague Convention") and the International Child Abduction Remedies Act, 42 U.S.C. §§ 11601-11610 ("ICARA").

**I.   PROCEDURAL BACKGROUND**

The Petitioner Karl Henrik Sundberg ("Petitioner") commenced this action on November 1, 2017, against the Respondent Lisa Michelle Bailey ("Respondent"), seeking the return of the parties' four-year-old daughter, L.P.B.S. ("Child"), to Sweden. [Doc. 1]. On November 22, 2017, the Court entered an Order setting this matter for hearing on December 20, 2017. [Doc. 8]. On November 28, 2017, the Court entered another Order, upon

motion of the Petitioner, staying the state court custody proceedings that had been initiated by the Respondent and declaring the state court's emergency custody order to be void and of no legal effect.  [Doc. 11].

On December 4, 2017, the Respondent filed a verified Answer to the Petitioner's Petition, denying that she had wrongfully removed or retained the Child and asserting various affirmative defenses under the Hague Convention.  [Doc. 15].

The Court conducted an evidentiary hearing on December 20, 2017, at which time the Court heard testimony from the parties as well as several of the parties' relatives.  The Court allowed the parties a brief opportunity following the hearing to submit written briefs on the issues raised at the hearing.  The parties filed their respective briefs on December 22, 2017.  [Docs. 18, 19].  On December 29, 2017, the Court entered an Order finding that the Child was wrongfully retained from her country of habitual residence in violation of the Petitioner's custody rights and ordering the return of the Child to Sweden in accordance with the terms of the Hague Convention.  [Doc. 20].

The Petitioner now moves for an award of expenses under the Convention and ICARA, 22 U.S.C. § 9007(b)(3).  [Doc. 25].  The Respondent objects to the Petitioner's Application [Doc. 26].

## II. STANDARD OF REVIEW

The Hague Convention provides that "[u]pon ordering the return of a child or issuing an order concerning rights of access under this Convention, the judicial or administrative authorities may, where appropriate, direct the person who removed or retained the child . . . to pay necessary expenses incurred by . . . the applicant, including travel expenses, any costs incurred or payments made for locating the child, the costs of legal representation of the applicant, and those of returning the child." Hague Convention, art. 26. ICARA provides as follows:

> Any court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

22 U.S.C. § 9007(b)(3). An award of expenses under the Convention and ICARA serves two primary purposes: "(1) to restore the applicant to the financial position he or she would have been in had there been no removal or retention and (2) to deter such removal or retention." Neves v. Neves, 637 F. Supp. 2d 322, 339 (W.D.N.C. 2009) (citation and internal quotation marks omitted).

3

"Although Article 26 of the Hague Convention provides that a court 'may' award 'necessary expenses' to a prevailing petitioner, [§ 9007(b)(3)] shifts the burden onto a losing respondent in a return action to show why an award of 'necessary expenses' would be 'clearly inappropriate.'" Ozaltin v. Ozaltin, 708 F.3d 355, 375 (2d Cir. 2013). This burden shifting "retains the equitable nature of cost awards, so that a prevailing petitioner's presumptive entitlement to an award of expenses is subject to the application of equitable principles by the district court." Souratgar v. Lee Jen Fair, 818 F.3d 72, 79 (2d Cir. 2016) (citation and internal quotation marks omitted). Ultimately, the award of expenses under the Hague Convention and ICARA is a matter within the Court's discretion. Ozaltin, 708 F.3d at 374-75.

## III. DISCUSSION

The Petitioner claims that he incurred $10,530.56 in expenses for airfare, lodging, and car rentals during the course of these proceedings. The details of these expenditures are set forth in the Petitioner's Affidavit. [Doc. 25-1]. In addition to these personal expenses, he claims that he incurred legal fees and costs (hereinafter "legal fees") in the amount of $10,068.42. The details of these legal fees are set forth in the Affidavit of the Petitioner's attorney, Derrick J. Hensley. [Doc. 25-5]. Thus, the Petitioner seeks a total

award of $20,598.98 for "necessary expenses" arising out of these proceedings and his efforts to have the Child returned to Sweden.

The Respondent objects to the Petitioner's Application, arguing that an award of expenses would be "clearly inappropriate" on three grounds. Specifically, the Respondent argues: (1) that the length of the Petitioner's stay in the United States was excessive and unnecessary; (2) that she acted in good faith in retaining the Child in the United States; and (3) that an award of expenses would create an unreasonable burden upon her.[1] The Court will address each of these arguments in turn.

### A. Petitioner's Stay in the United States

The Petitioner arrived in the United States two weeks after filing his Petition and remained in the country until the Court granted his Petition and he was able to depart with the Child on December 31, 2017. [Pet'r Aff., Doc. 25-1]. During that time, he incurred a number of expenses for air fare, car rental, and lodging, all of which are detailed in his Affidavit. [Id.].

The Respondent objects to being taxed with the cost of the Petitioner's original round-trip ticket, as the Petitioner did not return to Sweden as scheduled but rather chose to stay in the United States for a longer period of

---

[1] The Respondent makes no objections to the Petitioner's claim for legal fees. The Court has reviewed Petitioner's claimed legal fees and finds that they are reasonable.

5

time. She further argues that it was not necessary for the Petitioner to remain in the United States for as long as he did and therefore the expenses incurred during his extended stay should not be taxed to her. [Doc. 26 at 2].

The Respondent's objection to being taxed with the cost of the Petitioner's round-trip flight is overruled. As the Petitioner states in his Affidavit, the round-trip ticket (which cost approximately $366.00) was cheaper than a one-way flight. [Doc. 25-1 at ¶ 6a]. Additionally, it was not unreasonable for the Petitioner to anticipate that the hearing would be held before his scheduled return flight on December 6th, as most Hague Convention petitions are resolved within mere weeks of their filing. The Respondent has failed to demonstrate that the award of this particular expense would be "clearly inappropriate" under the circumstances.

As for the Respondent's objection to the length of the Petitioner's stay, the Court finds that the Petitioner's decision to remain in the United States until the Petition was resolved was a reasonable one under the circumstances. The parties were advised on November 22, 2017 that a final hearing on the Petition would be held on December 20, 2017. The Petitioner, who had not seen his Child in several months, opted to remain in North Carolina in order to continue visiting with the Child rather than undertake the additional expense of another round-trip international flight. Additionally, it

must be noted that the Respondent had attempted to gain custody from a North Carolina state court in the Petitioner's absence, and the Petitioner had to seek emergency relief from this Court to prevent the state court from taking action. Under these circumstances, the Petitioner's decision to remain in the United States pending the resolution of his Petition was entirely reasonable.

The Court has carefully reviewed all of the Petitioner's claimed expenses for this time period and concludes that they are reasonable and necessary to securing the return of the Child. Accordingly, the Respondent's objection in this regard is overruled.

### B. Respondent's "Good Faith"

Next, the Respondent contends that an award of expenses would be inappropriate because she acted in good faith in retaining the Child in the United States based upon her understanding of the parties' written agreement. [Doc. 26 at 3-4]. Specifically, she argues that "it was not unreasonable for the Respondent to defend herself against the Petitioner's request for return given the ambiguous nature of their agreement and her belief that she was within her rights to remain in the United States with [the Child]." [Id. at 4].

While the reasonable belief of the removing parent can be a "relevant equitable factor" in determining the appropriateness of an award of

7

expenses, Ozaltin, 708 F.3d at 375, the Respondent's asserted good faith in retaining the Child in the United States does not, under the circumstances of this case, render such an award to the Petitioner "clearly inappropriate." As the Court noted in its prior Order [Doc. 20], the parties' written agreement made clear that the parties anticipated the Respondent and the Child returning to Sweden no later than May 2017 (and possibly earlier, if the Respondent could not find employment in the United States). When the Respondent advised the Petitioner in early 2017 that she did not intend to return to Sweden, he became very upset and threatened to report her to the authorities. The Respondent then instituted custody proceedings in the United States in an attempt to gain sole custody of the Child, in violation of the Petitioner's custody rights under Swedish law. In response, the Petitioner promptly initiated the procedure with the Swedish Government and the U.S. State Department to facilitate the return of the Child, which the Respondent ignored. The Petitioner then commenced the present judicial proceedings, which finally resulted in the return of the Child to Sweden on December 31, 2017. The Respondent's continued disregard of the Petitioner's custody rights and the parties' own written agreement belies her professed good faith in retaining the Child in the United States. As such, the Respondent's belief that she was entitled to retain the Child in the United

States over the objections of the Petitioner do not render an award of expenses "clearly inappropriate" in this case.

**C.     Burden on Respondent**

Finally, the Respondent contends that an award of expenses would create an unreasonable burden on her.  Specifically, the Respondent argues that she has already incurred "significant expenses and costs of her own in her good-faith defense of this matter" and that she has even resorted to online "crowd funding" in order to finance her defense.  [Doc. 26 at 4-5].

Under ICARA, courts have discretion to reduce or even eliminate an award of expenses based upon a respondent's financial circumstances. Neves, 637 F. Supp. 2d at 345.  However, "the fact that the respondent may already owe substantial fees to his or her own attorney does not make an award of the petitioner's attorney's fees 'clearly inappropriate.'" Mendoza v. Silva, 987 F. Supp. 2d 910, 915 (N.D. Iowa 2014).   The Respondent previously testified that she is able to maintain steady, full-time employment in the United States.  Presumably she will be able to resume such regular employment once she has returned from her trip to Sweden.  [See Doc. 26 at 5 (noting that Respondent has traveled to Sweden to visit the Child and that her "temporary absence from the United States has rendered her employment vulnerable and limited her ability to work at her full capacity")].

9

Finally, the Court notes that a "Go Fund Me" page has been set up in order to solicit donations to assist the Respondent in paying the expenses related to this litigation, and that the Respondent has actively encouraged contributions to this online campaign.[2] As of the time of the filing of the present motion, more than $12,000 had been raised for the Respondent's benefit. Given the financial support that the Respondent is receiving, her ability to maintain steady employment in the United States, and the overall reasonableness of the Petitioner's claimed legal fees and other expenses, the Court finds that requiring the Respondent to pay the Petitioner's reasonable and necessary expenses incurred in prosecuting this action would not be "clearly inappropriate."

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Petitioner's Application for Award of Expenses [Doc. 25] is **GRANTED**, and the Petitioner is hereby awarded the sum of $20,598.98 for necessary expenses arising out of these proceedings and from the Petitioner's efforts to have the Child returned to Sweden.

---

[2] The Court has reviewed the fundraising webpage and notes that it does not appear to have been created by the Respondent herself but rather by other people on her behalf. The Respondent, however, does not contest that these funds will ultimately be paid to her. While the Court expresses no opinion on the use of such "crowd sourcing" to finance litigation, the Court does question the propriety of the use of the Child's name and likeness on the webpage, as well as the manner in which this litigation is characterized.

**IT IS SO ORDERED.**

Signed: March 8, 2018

Martin Reidinger
United States District Judge